# UNITED STATES DISTRICT COURT EASTERN DISTRICT OF MISSOURI EASTERN DIVISION

| | | |
|---|---|---|
| SHARON JAMES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| BLEIGH CONSTRUCTION COMPANY, | ) | Case No. 2:19-CV-00017 NAB |
| | ) | |
| Defendant and Third-Party Plaintiff, | ) | |
| v. | ) | |
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Third-Party Defendant | ) | |

## MEMORANDUM AND ORDER

This matter comes before the Court on Third-Party Defendant United States of America's (the "Government") Motion to Dismiss Third-Party Plaintiff Bleigh Construction Company's ("Bleigh") complaint under Rule 12(b)(1) of the Federal Rules of Civil Procedure. (Doc. 22). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1). (Doc. 10). For the following reasons, the motion will be granted, Bleigh's claims against the United States of America will be dismissed, and Plaintiff Sharon James' ("Plaintiff" or "James") remaining state-law claims will be remanded to state court pursuant to 28 U.S.C. § 1367(c)(3) because the Court declines to exercise supplemental jurisdiction over those claims.

## I.      Background

On February 24, 2016, Plaintiff Sharon James fell and was injured while walking through a parking lot, which was under construction, located in the Huck Finn Shopping Center in Hannibal, Missouri. Plaintiff alleged that she was walking through the parking lot in order to reach a United States mailbox, which was located within the perimeter of the construction zone. The construction zone was managed by Bleigh Construction Company. Bleigh alleges that prior to the date of Plaintiff's injury, it had contacted the United States Postal Office in Hannibal to request that the mailbox be relocated for the duration of the construction. Bleigh further alleges that a United States Postal Service ("USPS") employee refused to relocate the mailbox or cause it to be out of service while construction was ongoing.

James filed a negligence lawsuit against Bleigh in the Circuit Court of Marion County, Missouri, in which she alleged that Bleigh failed to warn her that the property was not reasonably safe and failed to use ordinary care to remove the dangerous conditions on the property. Bleigh subsequently filed a third-party complaint in state court against the Government, arguing that the Government was contributorily negligent in its alleged failure to relocate the mailbox. The Government then removed the action to federal court pursuant to 28 U.S.C. § 1442(a)(1), which states in pertinent part that a civil action against the United States or "any agency thereof or any officer . . . of the United States or of any agency thereof, sued in an individual capacity for any act under color of such office . . ." may be removed to "the district court of the United States for the district and division embracing the place wherein it is pending."

In the instant motion, Defendant United States of America moves to dismiss the claim against it for lack of subject matter jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1) and the doctrine of sovereign immunity.

## I.     LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(1), a party may move to dismiss an action based on lack of subject matter jurisdiction. Dismissal under Rule 12(b)(1) is appropriate when subject matter jurisdiction is successfully challenged on the face of the complaint or on the facts. *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993). Because a Rule 12(b)(1) motion addresses "the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Osborn v. United States*, 918 F.2d 724, 730 (8th Cir. 1990). The Eighth Circuit has held that "[i]n deciding a motion under Rule 12(b)(1), the district court must distinguish between a facial attack—where it looks only to the face of the pleadings—and a factual attack—where it may consider matters outside the pleadings." *Croyle v. United States*, 908 F.3d 377, 380 (8th Cir. 2018) (citing *Osborn v. United States*, 918 F.2d 724, 729 n. 6 (8th Cir. 1990)). A distinction, "often overlooked, [exists] between 12(b)(1) motions that attack the complaint on its face and 12(b)(1) motions that attack the existence of subject matter jurisdiction *in fact*, quite apart from any pleadings." *Walls v. Bd. of Regents of Se. Mo. State Univ.*, No. 1:09 CV 35 RWS, 2009 WL 2170176, at *1, (E.D. Mo. July 20, 2009), (emphasis added) (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). "In the first instance, the court restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under rule 12(b)(6)." *Osborn*, 918 F.2d at 729. Under a factual attack, however, "no presumptive truthfulness attaches to the plaintiff's allegations," and the non-moving party does not have the benefit of Rule 12(b)(6) safeguards. *Id.* at 730. Considering evidence beyond the complaint does not convert a Rule 12(b)(1) motion to a Rule 56 motion for

summary judgment. *Id.* at 729. As the parties have attached and referenced materials which are outside of the pleadings, the Court will treat Defendant's motion as a factual attack.

To survive a motion to dismiss for lack of subject matter jurisdiction, the party asserting jurisdiction has the burden of establishing that subject matter jurisdiction exists. *V S Ltd. P'ship v. Dep't of Hous. & Urban Dev.*, 235 F.3d 1109, 1112 (8th Cir. 2000).

## II. DISCUSSION

### A. Defendant United States' Motion to Dismiss the Claim Against It

In the instant motion, Defendant United States argues that this Court lacks subject matter jurisdiction over it under the doctrine of sovereign immunity. More specifically, Defendant United States argues that the Federal Tort Claims Act's discretionary function exception applies to Bleigh's claim against the United States.

Under the doctrine of sovereign immunity, the United States and its agencies are immune from suit unless sovereign immunity has been waived. *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994). "Sovereign immunity is jurisdictional in nature." *Id.* "'Congress waived the sovereign immunity of the United States by enacting the [Federal Tort Claims Act], under which the federal government is liable for certain torts its agents commit in the course of their employment." *Riley v. United States*, 486 F.3d 1030, 1032 (8th Cir. 2007) (quoting *C.R.S. by D.B.S. v. United States*, 11 F.3d 791, 795 (8th Cir. 1993); 28 U.S.C. § 2674; & 28 U.S.C. § 1346(b)). *See also Croyle v. United States*, 908 F.3d 377, 381 (8th Cir. 2018) ("The FTCA waives the Government's sovereign immunity for some tort claims, authorizing private suits for negligence of Government agents."). Under the FTCA, "[t]he United States [is] liable . . . in the same manner and to the same extent as a private individual under like circumstances, but [is not] liable for interest prior to judgment or for punitive damages." 28 U.S.C. § 2674. *See also* 28 U.S.C. § 1346(b)(1) ("Subject to the provisions of chapter 171 of this title, the district courts . . . shall have exclusive jurisdiction of

civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.").

The waiver of sovereign immunity provided in the FTCA is subject to several exceptions. *Croyle*, 908 F.3d at 381. Defendant United States contends that the "discretionary function exception" described in 28 U.S.C. § 2680(a) applies to Bleigh's claim against it in this case, such that sovereign immunity has not been waived. Under that provision, the FTCA's waiver of sovereign immunity does not apply to

> [a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or **based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.**

28 U.S.C. § 2680(a) (emphasis added). "If the Government's conduct is within the discretionary function exception, 'the federal court lacks subject matter jurisdiction.'" *Croyle*, 908 F.3d at 381 (quoting *Hinsley v. Standing Rock Child Protective Servs.*, 516 F.3d 668, 672 (8th Cir. 2008).

The Supreme Court has established a two-part test for determining whether the discretionary function applies. *Berkovitz v. United States*, 486 U.S. 531, 536 (1988). *Accord Croyle*, 908 F.3d at 381; *Riley v. United States*, 486 F.3d 1030, 1032 (8th Cir. 2007)). "First, the conduct at issue must be discretionary, involving 'an element of judgment or choice.'" *Riley*, 486 F.3d at 1032 (quoting *Berkovitz*, 486 U.S. at 536)). "If a federal statute, regulation, or policy mandates a particular action, the discretionary function exception will not apply." *Croyle*, 908 F.3d at 381 (citing *Berkovitz*, 486 U.S. at 536). "If, on the other hand, no mandate exists, the action is

considered a product of judgment or choice and the first step is satisfied." *Hinsley v. Standing Rock Child Protective Servs.*, 516 F.3d 668, 673 (8th Cir. 2008) (citing *Dykstra v. U.S. Bureau of Prisons*, 140 F.3d 791, 795 (8th Cir. 1998)).

Second, "the judgment or choice must be 'the kind that the discretionary function exception was designed to shield.'" *Croyle*, 908 F.3d at 381 (citing *Berkovitz*, 486 U.S. at 536). "Because the exception's purpose is to prevent 'judicial second-guessing' of government decisions based on public policy considerations, it protects only those judgments 'grounded in social, economic, and political policy.'" *C.R.S. by D.B.S. v. United States*, 11 F.3d 791, 796 (8th Cir. 1993) (quoting *United States v. v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 814 (1984). *Accord Riley*, 486 F.3d at 1032. For this prong to be satisfied, "[t]he judgment or decision need only be susceptible to policy analysis, regardless of whether social, economic, or political policy was ever actually taken into account . . ." *Demery v. U.S. Dep't of Interior*, 357 F.3d 830, 833 (8th Cir. 2004). Moreover, the Supreme Court has emphasized that protected "[d]iscretionary conduct is not confined to the policy or planning level." *United States v. Gaubert*, 499 U.S. 315, 325 (1991). "Day-to-day management . . . regularly requires judgment as to which of a range of permissible courses is the wisest." *Id.*

Defendant United States argues that the discretionary function exception applies to the claim against it in this case, relying on two cases in which courts have relied on that exception to dismiss claims based on unsafe mailbox location or maintenance. In *Riley*, the plaintiff alleged that he was in a car accident that was caused in part by mailboxes that obscured his view of traffic. 486 F.3d at 1031. The plaintiff sued the United States, alleging that the USPS had negligently placed, maintained, and failed to relocate the mailboxes. *Id.* The district court dismissed the case for lack of subject matter jurisdiction based on sovereign immunity, and the Eighth Circuit affirmed. *Id.* at

1031-34. Applying the two-prong *Berkovitz* test, the Eighth Circuit first found that the USPS's decision on where to locate the mailbox was discretionary, involving an element of judgment or choice. *Id.* at 1032-33. The court noted that "[n]o federal statute or rule mandated the USPS to locate the mailboxes at any particular place," and that the Postmaster had filed a declaration in the case indicating reasons for choosing the particular delivery route and mailbox location at issue. *Id.* The court rejected the plaintiff's argument that the USPS had no discretion and was bound by guidelines in the "Green Book" requiring that drivers have sufficient sight distance at intersections to make safe departures. *Id.* at 1033. The court noted that the Green Book provisions are guidelines and are not mandatory and concluded that the Green Book's own provisions "illustrate[d] that the USPS's decision on locating the mailboxes is discretionary." *Id.* at 1033-34. Turning to the second prong of the *Berkovitz* test, the court found that "the judgment of where to locate the mailboxes is of the kind that the discretionary function exception was designed to shield." *Id.* at 1034. It noted that 39 U.S.C. § 403(b) provides that "[i]t shall be the responsibility of the Postal Service to maintain an efficient system of collection, sorting, and delivery of the mail nationwide . . . and to establish and maintain postal facilities of such character and in such locations, that postal patrons throughout the Nation will, consistent with reasonable economies of postal operations, have ready access to essential postal services." *Riley*, 486 F.3d at 1034 (quoting 39 U.S.C. § 403(b)). The court further noted that the United States had chosen the location at issue after "[b]alancing personnel, efficiency, economy, and safety." *Id.* Because it found both prongs were met, the court affirmed the district court's dismissal based on a lack of subject matter jurisdiction. *Id.* at 1034.

The Tenth Circuit reached the same conclusion in *Lopez v. United States*, 376 F.3d 1055 (10th Cir. 2004), another case in which the plaintiffs alleged that the placement of mailboxes obstructed their view and caused a car accident. The court found that the first prong was met,

rejecting the plaintiffs' argument that New Mexico statutes required the mailboxes to be placed where they were and finding that the USPS was empowered to exercise its discretion to determine an appropriate location for the mailboxes. *Id.* at 1058-59. The court also found that the second prong was met, reasoning that "placement of the mailboxes was susceptible to such policy considerations as timeliness of delivery, efficiency of route, customer satisfaction, and patron and postman safety" and that "[p]lacement of mailboxes entails a calculated decision, based on the weighing of various costs and benefits." *Id.* at 1059-61. The court also noted that "[w]hether or not postal officials actually considered policy questions in this case is not legally relevant," because "[t]he dispositive question is whether the relocation of the mailboxes is 'susceptible to policy analysis.'" *Id.* at 1061 (quoting *Gaubert*, 499 U.S. at 325). Because the decision regarding the location of the mailboxes was a discretionary function within the meaning of the FTCA, the Court affirmed the judgment of the district court granting the defendant's motion to dismiss. *Id.*

Defendant United States argues that here, as in *Riley* and *Lopez*, the United States' decision regarding the location of a mailbox is protected by the discretionary function exception, and therefore sovereign immunity applies to Bleigh's claim against the United States. Bleigh argues that its claim does not fall within the discretionary function exception, because the Postal Operations Manual on Collection Boxes requires the postal service "to 'continually review' collection location standards and consider the safety of its employees and the public, and there is no evidence [the Government] followed this policy." Doc. 24 at 2, citing Postal Operations Manual, § 313.12, Issue 9, July 2002, Updated with Revisions through July 7, 2016 (The Postal Service is "generally charged with" "continually review[ing] collection operations," and "mak[ing] adjustments as justified by changing conditions such as the safety and security of employees, customers, and the public."). In support of its argument, Bleigh refers the Court to

*Berkovitz*, which states that the discretionary function exception does not apply "when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." *Berkovitz*, 486 U.S. at 536. Bleigh argues that, because there is a policy in place that postal employees are required to follow, and because there is no evidence the Government appropriately complied with these policies, the discretionary function exception cannot apply to its claim against the Government. Bleigh also argues that it should be allowed to conduct further discovery, as it may uncover further applicable USPS policies that were not followed in this instance.

First, the policy on which Bleigh relies does not actually mandate a course of action that a postal employee must follow, and therefore does not constitute a required directive that would serve to remove agency discretion. In order for a policy to operate as a mandatory directive such that the discretionary function exception is no longer applicable, the provision must "bind agency personnel" to act in a specific manner that entirely removes the agency's discretion. *Irving v. United States*, 162, F3d 154, 164 (1st Cir. 1998) (en banc), cert. denied, 582 U.S. 812 (1999). The policy cited by Bleigh does not do so, and in fact, serves to reinforce the discretionary nature of the decision at issue here. The policy states that the postal service should "[b]alance collection locations and schedules according to the specific nature of customer and community needs (e.g., commercial centers, shopping centers, senior citizen housing, and public facilities), preparation of collection mail, and dispatches for timely processing of mail at the processing plant," and that they should "[m]ake adjustments as justified by changing conditions." This section of the Postal Service Manual does not mandate a specific action, but instead makes it clear that the USPS retains broad discretion regarding the placement of post office boxes.

Furthermore, Plaintiff's argument that the discretionary function cannot apply because there is no evidence that the Government carefully followed the purportedly applicable policies is

without merit, and appears to reflect a general misunderstanding of the discretionary function exception. If the governmental decision challenged in Bleigh's claim falls within the discretionary function exception, there is no requirement that the decision be made with any sort of due care, or with any care at all. To the contrary, the Eighth Circuit has emphasized that under the relevant statute, "if qualifying discretion exists, the exception applies regardless of whether the government employee abuses that discretion." *Buckler v. United States*, 919 F.3d 1038, 1045 (8th Cir. 2019). *See also Layton v. United States*, 984 F.2d 1496, 1505 (8th Cir. 1993) (expressly rejecting the argument that the government was obligated to exercise "due care" in deciding how thoroughly to warn contractors about dangers associated with felling trees, because such decisions were protected by the discretionary function exception; noting that "when the steps in the execution of a policy choice also require policy judgments, they too are protected by the discretionary function exception").

Consistent with the above, the approach consistently taken by courts addressing the discretionary function exception is to apply the two-prong *Berkovitz* test to the challenged decision, and dismiss the claims if the test is satisfied, without regard to whether the government exercised "due care" in making the decision at issue. *See, e.g.*, *Croyle*, 908 F.3d at 381-83 (affirming dismissal of claims that the United States negligently failed to supervise an employee or warn about his history of sexual abuse where the two-prong *Berkovitz* test was satisfied, without addressing negligence or due care; noting that although there might be disagreements about how the interests of safety, reputational interests, and confidentiality should be balanced, "the FTCA does not empower judges to second guess such decisions via tort action") (quotation marks omitted); *Riley*, 486 F.3d at 1031-34 (affirming dismissal of a claim that the USPS negligently placed, maintained, and failed to relocate mailboxes where the two-prong *Berkovitz* test was

satisfied, without addressing due care or negligence); *Lopez*, 376 F.3d at 1057-60 (affirming dismissal of a claim that the USPS negligently placed, maintained, and failed to relocate mailboxes where the two-prong *Berkovitz* test was satisfied, without addressing due care or negligence; noting that "the question of negligence is irrelevant to the applicability of the discretionary function exception"); *Soni v. United States*, 739 F. Supp. 485, 488 (E.D. Mo. 1990) (granting summary judgment in favor of the United States on the plaintiff's claim that defendants designed, erected, and constructed a stair system with unsafe railings, a poor design, and inadequate warning signs; finding the two-prong *Berkovitz* test satisfied and not addressing whether the United States exercised due care).

Finally, Plaintiff's argument that they should be allowed further discovery in order to determine whether there are other applicable policies the Government should have followed, but did not carefully do so, is without merit. First of all, Plaintiff does not need discovery to identify other statutes, regulations, or policies related to the placement of mailboxes, as all federal statutes and regulations are available online and the USPS publishes its manuals and handbooks on its website.

The Court agrees with Defendant United States that here, as in *Riley* and *Lopez*, the discretionary function exception applies to Bleigh's claim against the United States. As in those cases, Bleigh's claim here is based on the United States' decision to place mailboxes in an unsafe location. The first prong of the *Berkovitz* test is met, because Bleigh has not shown that any statute, regulation, policy, or other mandate required the United States to place the mailboxes in any particular location. The second prong is met, because under *Riley*, "the judgment of where to locate the mailboxes is of the kind that the discretionary function exception was designed to shield." *Id.* at 1034. *See also Lopez* 376 F.3d at 1059-60 (mailbox placement is "susceptible to such policy

considerations as timeliness of delivery, efficiency of route, customer satisfaction, and patron and postman safety"). The FTCA does not permit the Court to second-guess the United States' discretionary decisions regarding such matters. Although the Court does not currently have any facts to indicate whether the government employees who made the decision regarding whether to move the mailbox actually considered the relevant policy factors in deciding to move the mailboxes, that is "not legally relevant," because it is clear that the "relocation of the mailboxes is susceptible to policy analysis." *See Lopez*, 376 F.3d at 1061.

Because the two-prong discretionary function test is satisfied, sovereign immunity applies to Bleigh's claim against the United States, and its claim must be dismissed.

### B. The Remaining State-Law Claims

Because the Court is dismissing the claims over which it has original jurisdiction, the Court next considers whether to exercise supplemental jurisdiction over the remaining state-law claims. Here, the only basis asserted for original jurisdiction was the presence of the United States as a defendant, and all of the claims against the United States have now been dismissed. The court has supplemental jurisdiction over the state-law claims pursuant to 28 U.S.C. § 1367(a). However, the district court may decline to exercise supplemental jurisdiction over state-law claims if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3).

"A district court's decision whether to exercise [supplemental] jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary." *Crest Constr. II, Inc. v. Doe*, 660 F.3d 346, 359 (8th Cir. 2011) (quoting *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009)). The Court makes this decision after "[b]alancing factors such as judicial economy, convenience, fairness and comity." *Quinn v. Ocwen Fed. Bank FSB,* 470 F.3d 1240, 1249 (8th Cir. 2006). The Eighth Circuit has noted that in the usual case, these factors "will point

toward declining to exercise jurisdiction over the remaining state-law claims." *Barstad v. Murray Cty.*, 420 F.3d 880, 888 (8th Cir. 2005) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). This reflects the policy that the federal courts should "exercise judicial restraint and avoid state law issues whenever possible" and should "provide great deference and comity to state court forums to decide issues involving state law questions." *Condor Corp. v. City of St. Paul*, 912 F.2d 215, 220 (8th Cir. 1990). Here, after consideration of the relevant factors, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims. This case is in its early stages, and the only remaining claims involve questions of state law that would be better determined by the Missouri state courts. Accordingly, Plaintiff's state law claims will be remanded to state court. *See Lindsey v. Dillard's, Inc.*, 306 F.3d 596 (8th Cir. 2002).

## IV. CONCLUSION

For the reasons stated above,

**IT IS HEREBY ORDERED** that Bleigh's claim against Defendant United States of America is **DISMISSED**, with prejudice.

**IT IS FURTHER ORDERED** that this case is **REMANDED** to the Circuit Court of Marion County, Missouri, for further proceedings on Plaintiff's remaining claims.

**IT IS FINALLY ORDERED** that all other pending motions in this case are **DENIED**, without prejudice.

NANNETTE A. BAKER
UNITED STATES MAGISTRATE JUDGE

Dated this 18th day of December, 2019.